KAREN P. HEWITT
United States Attorney
SHERRI WALKER HOBSON
Assistant U.S. Attorney
California State Bar No.
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim Case No. 08CR2127W |
| | ) | |
| Plaintiff, | ) | DATE: August 29, 2008 |
| | ) | TIME:  11 a.m. |
| v. | ) | |
| | ) | GOVERNMENT'S RESPONSE AND |
| | ) | OPPOSITION TO DEFENDANTS' |
| RAMON SANCHEZ-CASTELLANOS, | ) | MOTION FOR DISCOVERY |
| | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Sherri Walker Hobson, Assistant United States Attorney, and hereby files its response and opposition to defendants' motion.

DATED:   August 25, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

S/sherri hobson
SHERRI WALKER HOBSON
Assistant U.S. Attorney

## II

## **STATEMENT OF FACTS**

On June 28, 2008, defendant Ramon Sanchez-Castellanos, along with his wife and son, entered the United States the San Ysidro Port of Entry. Port officers subsequently found 220 pounds of iodine underneath a few blankets in the rear back seat of the vehicle. Iodine is a chemical used in the manufacturing of methamphetamine; 220 pounds of iodine could make approximately 50 pounds of methamphetamine. Iodine is a significant and necessary chemical used in the manufacturing of methamphetamine.

When defendant approached the primary lane, the primary officer discovered two zipped dark-colored nylon duffel bags and saw the word "corrosive" on a dark brown barrel stating "iodine" underneath the blankets. Defendant was directed to the secondary inspection area, where officers asked defendant what was contained in the unzipped duffel bag with the large barrels and defendant said "it was for pools" and that he did not know what type of chemical it was. When asked why the containers were covered under the blankets, defendant did not respond.

After being <u>Mirandized</u>, and waiving his rights, defendant stated that chemicals, referred to as "acido" or "acid" in English, were used to clean pools. Later, he stated that the chemicals would be used at a car wash. When asked if he owned a carwash, defendant said no. Then, defendant said that the iodine would be used to start a car wash business. (Iodine is NOT used in any type of pool cleaning). Defendant then changed his story and stated that this was his first time that he had smuggled iodine and that he was to take the iodine to Ontario. Once in Ontario, defendant said that he was to deliver the iodine to "Juanca" and "Nenis." He was going to receive $500 for his smuggling venture.

Defendant further stated that he was given $100 to purchase iodine from "Rafael Rodriguez." He purchased the iodine barrels (each containing 50 kilograms) on June 27, 2008 in Tijuana. When asked if his wife and son were with him, defendant said no, because he does not

take his family "near those people." Defendant said that his wife and son were not involved in the smuggling venture.

## II

## POINTS AND AUTHORITIES

### A. DEFENDANT'S MOTION TO COMPEL FURTHER DISCOVERY

It will continue to recognize its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedures. Defendants' additional discovery requests are addressed below.

    **1.    The Government Will Comply With Its Obligation Under Brady v. Maryland**

The Government is well aware of and will fully perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. The defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to him, or which pertains to the credibility of the Government's case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

611 F.2d at 774-775. See also, United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980) (the Government not required to create exculpatory material that does not exist); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial discovery privileges not contained in the Federal Rules of Criminal Procedure).

    **2.    The Disclosure of Statements Prior To The Witness Testifying on Direct Examination At Trial**

Production of witness statements is governed by the Jencks Act (18 U.S.C. § 3500) and need occur only after the witness testifies on direct examination. United States v. Taylor, 802 F.2d 1108, 1118 (9th Cir. 1986), cert. denied, 479 U.S. 1094 (1986); United States v. Mills, 641 F.2d

1  785, 790 (9th Cir.), cert. denied, 454 U.S. 902 (1981). Indeed, even material believed to be exculpatory and therefore subject to disclosure under the Brady doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act. See United States v. Bernard, 623, F.2d 551, 556-57 (9th Cir. 1979).

Further, the Government reserves the right to withhold the statements of any particular witnesses it deems necessary until after they testify. Otherwise, the Government will disclose the statements of witnesses, if it has not already done so, no later than five days prior to trial, provided that defense attorney complied with his obligations under Federal Rules of Criminal procedure 12.1, 12.2 and 16 and 26.2 and provided that defense attorney will turn over all "reverse Jencks" statements at that time.

### 3. Production of Agent's Handwritten Notes

The Government objects to defendants' blanket request for production of rough notes (i.e. investigator's notes) of agents that may exist. Prior production of these notes is not necessary because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-607 (9th Cir. 1980); see also, United States v. Griffin, 659 F.2d 932, 936-938 (9th Cir. 1981), cert. denied, 456 U.S. 949 (1982).

Moreover, in addition to the applicable case law, Rule 16(a)(2) of the Federal Rules of Criminal Procedure specifically exempts from disclosure the work product of the Government. The Government considers the rough notes of its agents to be work product and as such these notes are not subject to discovery. The Government will, however, request its agents to preserve their rough notes in the event that an appropriate showing of materiality is made at a later date. Although the Government will request its agents to preserve their handwritten notes or "rough" notes in the event materiality is shown, it objects to defendant's requests for full production for immediate examination and inspection.

**4.  Defendant's Prior Convictions or Similar Acts**

The Government will disclosed defendants' criminal record. The Government will provide one-month notice of any Rule 404(b) evidence prior to trial.

**5.  Seized Evidence**

Defense attorneys may schedule an appointment with the prosecutor to review any seized evidence.

**6.  Prior Wrongful Conduct Of Government Witnesses**

The Government will provide the criminal convictions and prior <u>material</u> acts of misconduct, if any exist, of its trial witnesses as mandated in <u>Giglio v. United States</u>, <u>supra</u>, 405 U.S. 150 (1972). The Government will provide such impeachment material, if any, at the time it files its trial memorandum although it is not required to produce such material until <u>after</u> its witnesses have testified at trial or at a hearing. See <u>United States v. Bernard</u>, 623 F.2d 551, 556 (9th Cir. 1979).

**7.  Motives Of Government Witnesses**

The Government agrees to provide information related to the bias, prejudice or other motivation of government trial witnesses as mandated in <u>Napue v. Illinois</u>, 360 U.S. 264 (1959). The Government will provide such impeachment material, if any, at the time it files its trial memorandum. At this time, the Government is unaware that prospective witnesses are biased or prejudiced against the defendant, or has a motive to falsify or distort their testimony.

**8.  Ability to Perceive; Any Drug or Alcohol Use by Government Witness**

At this time, the Government is not aware of any evidence that any Government witness' ability to perceive is impaired by the use of controlled substance or alcohol.

**9.  Witness List**

There is no requirement for the Government to supply defendants in a non-capital case with a list of the witnesses it expects to call at trial. <u>United States v. Dischner</u>, 974 F.2d 1502 (9th Cir.

1992)("we have consistently held that in noncapital cases, the government does not need to disclose the names of its witnesses prior to trial"); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1974), cert. denied, 419 U.S. 835 (1974); United States v. Glass, 421 F.2d 832, 833 (9th Cir. 1969). However, the Government will provide a tentative list of the witnesses it expects to call at trial when it files its trial memorandum, approximately five days before trial.

### 10.  Henthorn Review

The Government will conduct a "Henthorn" review of the testifying federal officers in this case.

### 11.  Expert Notice

The Government will provide notice of any expert testimony approximately one month prior to trial.

### 12.  Cooperating Witnesses/Defendants

The Government is not aware of any cooperating witnesses.

### 13.  Training Records/Performance Goals and Policy Awards

Defendant has not demonstrated any reasons for disclosure of training records. He has not identified how or why any training materials are relevant in this case. Similarly, defendant has not demonstrated what, how and why policy awards are relevant to this case.

### 14.  TECS Records

The Government will provide TECS records of defendant's vehicle/

### 15.  Grand Jury Transcripts

Defendant claims that he wants "grand jury transcripts that are relevant to the defense motion to dismiss the indictment." The Government objects to such blanket request for grand jury transcripts.

### III
### **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that defendant's motions, except where not opposed, be denied.

DATED: August 25, 2008.

                Respectfully submitted,

                KAREN P. HEWITT
                United States Attorney

                S/SHERRI WALKER HOBSON
                SHERRI WALKER HOBSON
                Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMON SANCHEZ-CASTELLANOS<br><br>Defendant. | Case No. 08CR2334DMS<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, Sherri Walker Hobson, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of Government's Response and Opposition to Defendant's Motion on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Michelle Betancourt, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 2008.       s/ Sherri Walker Hobson
                                                   SHERRI WALKER HOBSON